1   PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
    P.O. Box 5843
2   Oakland CA  94605
    Telephone:  (510) 452-0292
3   Facsimile:  (510) 452-5625
    E-mail:  pamela@pypesq.com
4
    Attorneys for Plaintiff
5   STAN DOBBS

6

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11

12  STAN DOBBS,                          )  NO.
                                         )
13          Plaintiff,                   )  **COMPLAINT FOR RETALIATION,**
                                         )  **DISABILITY DISCRIMINATION, RACE**
14  v.                                   )  **DISCRIMINATION, SLANDER,**
                                         )  **INVASION OF PRIVACY, TORTIOUS**
15  HAYWARD UNIFIED SCHOOL DISTRICT,     )  **BREACH OF CONTRACT, BREACH OF**
    LISA BRUNNER, LUIS A. REYNOSO AND    )  **THE IMPLIED COVENANT OF GOOD**
16  WILLIAM L. MCGEE,                    )  **FAITH AND FAIR DEALING AND**
                                         )  **WRONGFUL TERMINATION**
17          Defendants.                  )
                                         )  **(JURY TRIAL DEMANDED)**
18

19          Plaintiff STAN DOBBS by and through his attorneys, respectfully alleges as

20  follows:

21                      **Jurisdiction and Venue**

22          1.      This action arises under 42 U.S.C. §§§ 1981A, 1983 and 2000e *et seq*.

23  Plaintiff  invokes jurisdiction over his federal claims pursuant to the provisions of 28 U.S.C. §

24  1331, 1339 and 1343.  The acts and practices complained of herein occurred in Hayward,

25  California, within this judicial district.

26          2.      Jurisdiction over Plaintiff's claims under state law is invoked pursuant to

27  the provisions of 28 U.S.C. Section 1367.  The claims which arise under state law are so related

28  to claims within the original jurisdiction of this Court that they form a part of the same case and

13505P200PYP
                              -1-
                    COMPLAINT FOR DAMAGES

controversy under Article III of the United States Constitution.

**Parties**

3.        Plaintiff STAN DOBBS (hereinafter Dr. Dobbs) is a United States citizen. He earned his doctorate degree in Business Administration from Northcentral University, an accredited online university.  He received his MBA degree from the Florida Institute of Technology.  He also earned advance project and program management certifications from the University of North Carolina Flagler School of Business, Stanford University and Harvard University School of Law.  Dr. Dobbs is a retired veteran of the United States Navy having served his country for fifteen years from 1994 to 2009.

4.        While employed by the HAYWARD UNIFIED SCHOOL DISTRICT (hereinafter "Defendant HUSD"), Dr. Dobbs resided and worked in Hayward, California.  Dr. Dobbs has been affiliated with the HUSD since 2011.  He served as the Chief Business Operations and Finance Officer from 2011 to 2012, and as the Superintendent and Chief Executive Officer from 2013 to 2016.

5.        Defendant LISA BRUNNER (hereinafter "Defendant Brunner") is and was for the relevant time herein, an elected  member of the HUSD Board, responsible for the administration of HUSD activities, pursuant to the California Education Code and HUSD Board policies.  Defendant Brunner has been a Trustee for HUSD since 2010.  Dr. Dobbs sues Defendant Brunner in her official and individual capacity.

6.        Defendant LUIS A. REYNOSO (hereinafter "Defendant Reynoso") is and was for the relevant time herein, an elected member of the HUSD Board, responsible for the administration of HUSD activities, pursuant to the California Education Code and HUSD Board policies.  Defendant Reynoso has been a Trustee for HUSD since 2008.  Dr. Dobbs sues Defendant Reynoso in his official and individual capacity.

7.        Defendant WILLIAM L. MCGEE (hereinafter "Defendant McGee") is and was for the relevant time herein, an elected  member of the HUSD Board, responsible for the administration of HUSD activities, pursuant to the California Education Code and HUSD Board policies.  Defendant McGee has been a Trustee for HUSD since 2010.  Dr. Dobbs sues

13505P200PYF

Defendant McGee in his official and individual capacity.

8.      Defendant HUSD is a public entity governed by the provisions of the California Education Code and is responsible for providing educational instruction to all students within its district regardless of race, color or creed.  HUSD includes 45 schools and serves more than 24,000 students per year.  Its principal place of business is 2441 Amador Street, Hayward, California, located within the jurisdiction of this Court.

## Factual Allegations

9.      Defendant HUSD is a troubled public entity with a checkered history of bad decisions and acrimonious relationships with the community.  Since 2010, under the leadership of Defendants Reynoso, McGee and Brunner, HUSD has gone through four (4) District Superintendents.  The Superintendents report to the HUSD School Board.  As a result of the high turnover in the Superintendent position, HUSD has earned a reputation as a transient and low performing school district. At one point, HUSD was facing a hostile fiscal takeover of the District by the California Department of Education.

10.      Commencing in June 2013, Defendants hired Dr. Dobbs as the Interim Superintendent and Chief Executive Officer.  On or about May 21, 2014, Dr. Dobbs signed a written employment agreement with Defendant HUSD which was effective from October 23, 2013 to June 30, 2017.  HUSD was in desperate need of strong educational leadership at the time Dr. Dobbs was hired, having consistently ranked poorly in numerous education assessment tests. Prior to his employment, Dr. Dobbs outlined a plan for improvement of the District's educational program.  The plan required a minimum of Governing Board interference, and a maximum of effort by the Superintendent.  Dr. Dobbs immediately began to fulfill that plan after his hiring.

11.      During his tenure as Superintendent, Dr. Dobbs was well-liked and respected by staff and students, and made a number of valuable contributions to HUSD.  Dr. Dobbs has been described by students, parents and his colleagues as "a gifted educator," "a role model," "a tireless advocate," and "a super star."  He began a program to instill pride in the students and the teachers of the District with his "Made in Hayward" motto.  Educational success

-3-
COMPLAINT FOR DAMAGES

and achievements followed.

12.     During the slightly less than three year period Dr. Dobbs served as Superintendent, a number of achievements were realized:

- The District's graduation rate increased from 68% to over 84%, the highest rate of growth in Alameda County.
- The District finished building and modernizing five Measure I projects.
- The District passed Measure L to continue improving school facilities which authorized 11 facility enhancing projects, three sports complexes, a performing arts center and four new/modernized school sites.
- The Measure G parcel tax was passed to uniquely fund initiatives that would support instructional work inside the classroom.
- The District made 100% growth in every grade in every area of Math and ELA in the second year Common Core test cycle.
- The District had four Gates Millennium Scholars, the highest in Alameda County, two Presidential awards in recognition for integrating arts into the classroom, and international educational partnerships with China and France.
- The District received California Association of Bilingual Education Awards, entrepreneurship awards, and many others.
- The District launched the nation's only Middle College Program in which advanced middle school students were allowed to attend community college classes at the student's site.
- The Made in Hayward branding program was embraced and funded by the District's community.
- The District received career pathway grants that lead to advanced STEM programming at the most needed schools and communities, with the grants supporting 48 new career pathways for District students.

-4-
COMPLAINT FOR DAMAGES

- The District successfully negotiated new three year contracts with its employee, certificated and classified, associations.
- The District's bond credit rating improved.
- The District collaborated with the City of Hayward to expand the School Resource Officer capacity in its elementary schools.
- The District created the parent and student ambassador program to provide a platform for parent and student views.

13.     Despite these achievements, on September 14, 2016, Defendants Brunner, Reynoso and McGee, acting without the knowledge or consent of the remaining two other members of the HUSD School Board, voted to unlawfully terminate Dr. Dobbs' contract.  This action followed a series of illegal and inappropriate actions by Defendants.

14.     Defendants were aware that their roles and obligations were not to "micromanage" Dr. Dobbs' performance or decisions, yet, they often interfered in Dr. Dobbs' leadership and management of his staff.  Defendants never complied with their contractual obligations to provide written annual evaluations to Dr. Dobbs or notice of any unsatisfactory performance.  Instead, Defendants secretly initiated an unfettered investigation of Dr. Dobbs, including elements of his personal and private life, and fabricated false allegations of malfeasance against Dr. Dobbs in order to support an unjustifiable "termination for cause."

15.     Defendants also knowingly, or with reckless disregard for the truth, or with malicious intent, verbally and in writing published defamatory statements about Dr. Dobbs, untrue statements about his character, his private life and his job performance.  Defendants Reynoso and McGee in particular, falsely accused Dr. Dobbs of physically assaulting Defendant Reynoso.

16.     The HUSD School Board was aware at the time that Dr. Dobbs was hired that he had a military service-connected disability of post-traumatic stress and depression.  Defendants were also aware that certain members of Dr. Dobbs' staff, including particularly Employee A, had disabling conditions which could be triggered by stress or stressful conditions.

-5-
COMPLAINT FOR DAMAGES

17.     On September 16, 2015, Defendants Reynoso and McGee became abusive and tried to humiliate two employees in a closed session meeting.  Dr. Dobbs intervened to protect the two District employees, including Employee A who reported to Dr. Dobbs and not to the Defendants from Defendants' abusive conduct.  Defendants were aware at the time of their actions that Dr. Dobbs and Employee A were disabled persons and members of a protected group under Title VII and Section 504 of the Rehabilitation Act.

18.     Notwithstanding their knowledge of the disabilities and vulnerabilities of certain District staff members, including but not limited to Dr. Dobbs, Defendants repeatedly engaged in patterns of verbal, physical and emotional abuse directed toward said employees. Defendants repeatedly engaged in inappropriate harassing conduct toward employees in public and private meetings, made false accusations against employees and intentionally took actions to aggravate the disabling conditions suffered by District employees, including but not limited to Dr. Dobbs.

19.     The foregoing acts are illustrative only of the harassment and abuse to which Dr. Dobbs was subjected; these are not intended to be exhaustive or the only conduct of which he complains herein.

20.     Shortly after Dr. Dobbs intervened to protect himself and his disabled employees from the unlawful harassment by Defendants, Defendants secretly hired an unqualified private investigator to investigate Defendant Dobbs, including his personal and private life and his professional background.  The "investigation" which followed lacked any attributes of a fair and impartial investigation.

21.     The company hired by Defendants, Paradox Technology, was completely unqualified to evaluate Dr. Dobbs' performance as Superintendent or investigate "his conduct as an employee and representative" of HUSD.  Paradox Technology specializes in Payment Card Industry (PCI) planning and remediation, computer forensic investigations and IT service management. It has little if any experience in human resources or employment discrimination matters.

13505P200PYF

22.     During the course of this sham investigation, the investigator appeared completely unorganized, and took three days to complete his interview of Dr. Dobbs.  The interviewees were selected primarily from employees who had been terminated or disciplined during the tenure of Dr. Dobbs in the District.  Some individuals were naturally adverse and hostile to him.  The investigation report predictably mischaracterized statements that were made. The inexperienced investigator completely violated Dr. Dobbs' right of privacy, and even went so far as to seek to review Dr. Dobbs' personal cell phone. He spent District funds to travel across the State of California "investigating" events that occurred before Dr. Dobbs was hired as HUSD Superintendent in October 2013, including a radio interview in San Diego.

23.     The investigation resulted in recommendations that were internally inconsistent and unsupported by the evidence.  For example, although no evidence was admittedly uncovered that Dr. Dobbs approved an offer to Raymond McDonald to speak at Tennyson High School, the investigator's report nonetheless concludes that it was "more likely than not" that Dr. Dobbs knew about the Ray McDonald event, and therefore, lied to the investigator.  The investigation describes multiple other incidents and reports which were completely undocumented and unsupported by any credible evidence.

24.     The investigation included interviews with Defendants Reynoso, McGee and Brunner.  The charges which are based on the investigative report depend upon the statements made by these Defendants.  One of the incidents which purportedly constituted "cause" for terminating Dr. Dobbs' employment arose out of Dr. Dobbs' opposition to Defendants' discriminatory treatment of HUSD employees on September 16, 2015.  On September 29, 2015, Defendant Brunner gave a statement to the Hayward Police Department that nothing occurred in the meeting that would amount to a threat or an assault on anyone's part. The final investigative report fails to mention or even acknowledge Defendant Brunner's statement.  Defendant Brunner's statement to the Hayward Police Department completely contradicts the allegations of Defendant Reynoso and the conclusions of the investigative report.

25.     Throughout the course of this sham investigation, leaks regularly appeared

13505P200PYF

in local newspapers that could only have come from Defendants and/or District counsel, who were the only individuals privy to the information that was leaked.

26. While the secret investigation was pending, in or about March 2016, an African-American student addressed the Board. Subsequently, Defendants engaged in a series of concerted acts of harassment against the student which was protested by her parent. In his capacity and as part of his duties as Superintendent, Dr. Dobbs counseled Defendant Brunner about her inappropriate response to the African-American student and the complaint about Defendant Brunner's conduct. As a result of Dr. Dobbs' advocacy for fair and appropriate treatment of the African-American student, Defendants further determined to retaliate against him.

27. As a direct result of his protected activity, Dr. Dobbs went from an outstanding award-winning leader to being characterized as a habitual liar "willing to engage in a pattern of extreme acts of dishonesty" , a bully with an "explosive temper" who had allegedly been uncontrollably terrorizing school district employees for almost three (3) years, and professionally incompetent. Prior to his protected activity, none of the accusations made in the investigative report other than the false allegations of Defendants about the September 16th meeting had ever been brought to Dr. Dobbs' attention. The sham investigative report is riddled with false allegations of professional incompetence, dishonesty and unprofessional conduct.

28. In his entire career as an educator, finance officer, manager and U.S. Naval Commander, Dr. Dobbs had never been so maligned, accused of professional incompetence, negligence, dishonesty, unprofessional conduct, nor any of the multiple character defects alleged by Defendants and their investigator.

29. The final interview of Dr. Dobbs in connection with the sham investigation took place on September 1, 2016. Barely a week later, on September 8, 2016, Defendants issued a "Notice of Intent to Terminate Contract for Employment of Superintendent/CEO." Dr. Dobbs' written employment contract specified the manner in which any charges constituting cause for termination were to be stated, and the September 8, 2016

Notice of Intent to Terminate Contract for Employment of Superintendent/CEO, failed in its entirety to meet the requirements of the employment contract.

30.    Thereafter on September 13, 2016, Defendants purported to make available as part of a "news briefing" the "results and status" of the investigation.  This public release of information in advance of the closed session meeting required to be held with Dr. Dobbs prior to his termination clearly indicated that Defendants had predetermined the outcome, and would terminate Dr. Dobbs' employment.  At the required closed session meeting which did not take place until September 14, 2016, Defendants did not engage in any good faith consideration or dialogue with Dr. Dobbs - they did not ask any questions or make any comments about their concerns.

31.    Even though Defendants Reynoso, Brunner and McGee were required to disqualify themselves from making any determination as to whether "cause" existed concerning the charges that they had themselves spoken to the investigator about, under the most fundamental tenets of due process, Defendants McGee, Brunner and Reynoso nonetheless participated in the decision as to whether cause existed to terminate Dr. Dobbs.  Without the active participation of even one of these Defendants, the vote to terminate Dr. Dobbs' employment for cause would have failed.

32.    Commencing on or about June 15, 2017, Dr. Dobbs exhausted his administrative remedies by filing the appropriate joint charges with the U.S. Equal Employment Opportunity Commission (EEOC) and the Department of Fair Employment & Housing (DFEH).

**Damages**

33.    As a result of the acts alleged herein, Dr. Dobbs sustained and will continue to sustain substantial loss of earnings, and benefits in an amount to be determined according to proof.  In addition, Dr. Dobbs has suffered and will continue to suffer damages to his career and reputation, in an amount to be determined according to proof.

34.    As a result of the acts and omissions alleged herein, Dr. Dobbs was humiliated, hurt and injured in his health, strength and activity, sustaining injuries to his nervous

13505P200PYF

system and person, and has suffered and will continue to suffer in the future, severe mental anguish and emotional distress, loss of enjoyment of living, anxiety, worry, loss of self-esteem and well-being, incidental damages and out-of-pocket expenses, all to his damage in an amount in excess of $500,000.00 to be shown according to proof.

35.     Dr. Dobbs incurred medical expenses as a result of his injuries, and has suffered special damages for medical services and treatment in an amount to be shown according to proof.

36.     The conduct of the individual Defendants was willful, wanton, malicious and oppressive in that they knew or should have known that their conduct was unreasonable and illegal.  Furthermore, Defendants' acts were carried out in wilful and conscious disregard of Dr. Dobbs' rights and well-being, entitling Dr. Dobbs to punitive damages in an amount appropriate to punish or make an example of such conduct.

**FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE VII**
**RETALIATION - DISABILITY**
**(AGAINST DEFENDANT HUSD)**

37.     Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through 36, as if fully set forth herein.

38.     This action is brought pursuant to Title VII to obtain relief for retaliation Dr. Dobbs suffered in employment as a result of his opposition to harassment and abuse of employees based upon their disability, including but not limited to himself.

39.     As an employee who lawfully opposed conduct which violated Title VII, Dr. Dobbs is a member of a protected group under Title VII.

40.     During the years of his employment with Defendant HUSD, Dr. Dobbs had a reasonable good faith belief that the actions of the Defendants violated Title VII and the Rehabilitation Act.  Based upon this belief, Dr. Dobbs opposed Defendants' unlawful actions.

41.     Dr. Dobbs' protected conduct was a substantial or motivating factor of Defendant's retaliatory conduct against him as alleged above.  Defendant's conduct was in

violation of Title VII and has caused Dr. Dobbs to suffer damages as set forth above.

**WHEREFORE**, Plaintiff requests relief as set forth herein.

**SECOND CAUSE OF ACTION**
**VIOLATION OF REHABILITATION ACT**
**RETALIATION**
**(AGAINST DEFENDANT HUSD)**

42.    Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through 41, as if fully set forth herein.

43.    This action is brought pursuant to the Rehabilitation Act of 1973 to obtain relief for retaliation Dr. Dobbs suffered in employment as a result of his opposition to harassment and abuse of employees based upon their disability, including but not limited to himself.

44.    During the years of his employment with Defendant HUSD, Dr. Dobbs had a reasonable good faith belief that the actions of the Defendants violated Title VII and the Rehabilitation Act.  Based upon this belief, Dr. Dobbs opposed Defendants' unlawful actions.

45.    As an employee who lawfully opposed conduct which violated the Rehabilitation Act, Dr. Dobbs is a member of a protected group under the Act,

46.    Dr. Dobbs' protected conduct was a substantial or motivating factor of Defendant's retaliatory conduct against him as alleged above.  Defendant's conduct was in violation of the Rehabilitation Act and has caused Dr. Dobbs to suffer damages as set forth above.

**WHEREFORE**, Plaintiff requests relief as set forth herein.

**THIRD CAUSE OF ACTION**
**VIOLATION OF TITLE VII**
**RETALIATION - RACE**
**(AGAINST DEFENDANT HUSD)**

47.    Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through 46, as if fully set forth herein.

48.    This action is brought pursuant to Title VII to obtain relief for retaliation

13505P200PYF

Dr. Dobbs suffered in employment as a result of his opposition to racial harassment and abuse of an African-American student.

49.   During the years of his employment with Defendant HUSD, Dr. Dobbs had a reasonable good faith belief that the actions of the Defendants violated the student's educational rights under Title VI and her First Amendment right to free speech.  Based upon this belief, Dr. Dobbs opposed Defendants' unlawful actions.

50.   As an employee who lawfully opposed racial harassment, Dr. Dobbs is a member of a protected group under Title VII.

51.   Dr. Dobbs' protected conduct was a substantial or motivating factor of Defendant's retaliatory conduct against him as alleged above.  Defendants' conduct was in violation of Title VII and has caused Dr. Dobbs to suffer damages as set forth above.

**WHEREFORE**, Plaintiff requests relief as set forth herein.

### FOURTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. SECTION 1983
### (DEFENDANT BRUNNER)

52.   Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through 51, as if fully set forth herein.

53.   Prior to and up to and including September 2016, Defendant HUSD maintained discriminatory policies and/or customs which exhibited deliberate indifference to the constitutional and civil rights of African-American students.  Race was a motivating factor for Defendants' refusal to respect the rights of African-American students, and their actions had a disparate adverse impact upon said students.  In or about March 2016, in the course of responding to one such student, Defendant Brunner treated the student in a racially discriminatory manner.  Dr. Dobbs opposed the racially discriminatory treatment of the student and urged counseled Defendant Brunner about her inappropriate conduct.

54.   In doing each and all of the acts alleged herein, Defendant Brunner was acting under color of state law pursuant to the California Government Code.

55.   Defendant Brunner was personally aware of Dr. Dobbs' protected speech

13505P200PYF

-12-
COMPLAINT FOR DAMAGES

and activities as he confronted her about the issue on more than one occasion.  Defendant
Brunner personally spearheaded the administrative action that led to Dr. Dobbs removal from his
position and ultimate termination.  Defendant Brunner's conduct occurred immediately after and
concurrently with Dr. Dobbs' speech and protected activities.

56.     Defendant Brunner retaliated against Dr. Dobbs as a result of his
opposition to racial harassment and discriminatory treatment of the African-American student.
Dr. Dobbs' protected conduct was a substantial or motivating factor in Defendant Brunner's
retaliatory conduct against him as alleged above.  Defendant's conduct was in violation of  in
violation of 42 U.S.C. Section 1983 and caused Dr. Dobbs to suffer damages as set forth above.

57.     There are numerous African-American students who have been
discriminated against by Defendant HUSD on account of their race, but who have not filed
discrimination complaints or joined in this suit because of fear of recrimination on the part of
Defendant HUSD.

**WHEREFORE,** Plaintiff prays for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**(AGAINST BRUNNER, REYNOSO & MCGEE)**

58.     Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through
57, as if fully set forth herein.

59.     In doing each and all of the acts alleged herein, Defendants were acting
under color of state law.

60.     Defendants repeatedly engaged in patterns of verbal, physical and
emotional abuse directed toward disabled employees.  Defendants repeatedly engaged in
inappropriate harassing conduct toward employees in public and private meetings, made false
accusations against employees and intentionally took actions to aggravate the disabling
conditions suffered by District employees, including but not limited to Dr. Dobbs.

61.     Defendants were personally aware of Dr. Dobbs' protected speech and

-13-
COMPLAINT FOR DAMAGES

activities as he confronted them about the issue on more than one occasion.  Defendants Brunner, Reynoso and McGee personally spearheaded the administrative action that led to Dr. Dobbs removal from his position and ultimate termination.  Defendants' conduct occurred immediately after and concurrently with Dr. Dobbs' speech and protected activities.

62.     Defendants, by their conduct herein alleged, intentionally, wilfully and without justification, did deprive Dr. Dobbs and other similarly situated employees of their rights, privileges and immunities secured them by the laws of the United States, including but not limited to their rights to be free from discrimination based upon their disability as provided by the Rehabilitation Act in violation of 42 U.S.C. § 1983.  Defendants' conduct caused Dr. Dobbs to suffer harm and damages as set forth above.

**WHEREFORE,** Plaintiff prays for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF TITLE VII**
**DISABILITY DISCRIMINATION**
**(AGAINST DEFENDANT HUSD)**

63.     Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through 62, as if fully set forth herein.

64.     This action is brought pursuant to Title VII, to obtain relief for Dr. Dobbs for discrimination he suffered in his employment because of his disability.

65.     As a disabled person, Dr. Dobbs is a member of a protected group under Title VII and the Rehabilitation Act.

66.     Dr. Dobbs' disability was a motivating factor in Defendants' conduct toward him.  Defendants' conduct caused Dr. Dobbs to suffer harm and damages as set forth above.

**WHEREFORE,** Plaintiff prays for relief as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(AGAINST DEFENDANT HUSD)**

67.     Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through

66, as if fully set forth herein.

68.     As set forth above, on or about May 21, 2014, Dr. Dobbs signed a written employment agreement with Defendant HUSD which was effective from October 23, 2013 to June 30, 2017.  Dr. Dobbs performed satisfactorily according to the terms and conditions of the written employment agreement. By their conduct as alleged herein, Defendants breached the written employment agreement, causing significant harm and damages to Dr. Dobbs.

**WHEREFORE,** Plaintiff prays for relief as hereinafter set forth.

### EIGHTH CAUSE OF ACTION
### BREACH OF THE COVENANT
### (AGAINST DEFENDANT HUSD)

69.     Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through 68, as if fully set forth herein.

70.     As set forth above, on or about May 21, 2014, Dr. Dobbs signed a written employment agreement with Defendant HUSD which was effective from October 23, 2013 to June 30, 2017.  Dr. Dobbs performed satisfactorily according to the terms and conditions of the written employment agreement. By their conduct as alleged herein, Defendants breached the implied covenant of good faith and fair dealing in the written employment agreement.  In this case, Defendants engaged in conduct with the express purpose of avoiding the contract and denying Dr. Dobbs the benefits he was owed under the contract.  Defendants' conduct caused Dr. Dobbs to suffer harm and damages as set forth above.

**WHEREFORE,** Plaintiff prays for relief as hereinafter set forth.

### NINTH CAUSE OF ACTION
### WRONGFUL DISCHARGE
### (AGAINST DEFENDANT HUSD)

71.     Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through 70, as if fully set forth herein.

72.     As set forth above, on or about May 21, 2014, Dr. Dobbs signed a written employment agreement with Defendant HUSD which was effective from October 23, 2013 to

13505P200PYP

June 30, 2017. Dr. Dobbs performed satisfactorily according to the terms and conditions of the written employment agreement. By their conduct in terminating Dr. Dobbs' contract on September 15, 2016, Defendants wrongfully discharged Dr. Dobbs in violation of public policy. Defendants' conduct caused Dr. Dobbs to suffer significant harm and damages as set forth above.

**WHEREFORE,** Plaintiff prays for relief as hereinafter set forth.

**TENTH CAUSE OF ACTION**
**PUBLICATION OF PRIVATE FACTS**
**(AGAINST ALL DEFENDANTS)**

73.    Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through 72, as if fully set forth herein.

74.    As a result of Defendants' sham investigation and their malicious intent to harm Dr. Dobbs, Defendants and each of them at various times publicly disclosed private facts about Dr. Dobbs which would be highly offensive and objectionable to a reasonable person and which were not of legitimate public concern.

**WHEREFORE,** Plaintiff prays for relief as hereinafter set forth.

**ELEVENTH CAUSE OF ACTION**
**INVASION OF PRIVACY**
**(AGAINST ALL DEFENDANTS)**

75.    Dr. Dobbs realleges and incorporates by reference Paragraphs 1 through 74, as if fully set forth herein.

76.    As a result of Defendants' sham investigation and their malicious intent to harm Dr. Dobbs, Defendants and each of them at various times intentionally intruded in Dr. Dobbs' private matters in a manner which would be highly offensive to a reasonable person.

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, and each of them as follows:

1.    Compensatory and special damages, including damages for mental and emotional distress, in an amount in excess of $500,000.00 to be determined at the time of trial;

2.    Costs of suit incurred herein, including reasonable attorneys' fees;

3.      Injunctive relief against Defendant HUSD and its agents and employees, enjoining them from denying, or aiding and/or inciting the denial of the civil rights of any employee on the basis of his or her disability;

4.      Injunctive relief against Defendant HUSD and its agents and employees, enjoining them from denying, or aiding and/or inciting the denial of the civil rights of African-American students residing within Hayward, California on the basis of race;

5.      Punitive and exemplary damages against Defendant Brunner in an amount appropriate to punish and make an example of her to be determined at the time of trial;

6.      Punitive and exemplary damages against Defendant Reynoso in an amount appropriate to punish and make an example of him to be determined at the time of trial;

7.      Punitive and exemplary damages against Defendant McGee in an amount appropriate to punish and make an example of him to be determined at the time of trial; and

8.      Such other and further relief as the Court deems just and proper.

Dated:   June 21, 2017                          LAW OFFICE OF PAMELA Y. PRICE

                                                           /s/  *Pamela Y. Price*
                                                     PAMELA Y. PRICE, Attorney for Plaintiff
                                                     STAN DOBBS

1

**<u>JURY TRIAL DEMANDED</u>**

2

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby

3

demands a trial by jury on all issues triable to a jury in each and every cause of action of his

4

Complaint.

5

6
Dated:   June 21, 2017                          LAW OFFICE OF PAMELA Y. PRICE

7

8
_____/s/ _Pamela Y. Price_____

9
PAMELA Y. PRICE, Attorney for Plaintiff
STAN DOBBS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28